UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MOJISOLA AFOLABI, ELEANOR KILLI, DAVID ONASILE,<br>Plaintiffs,<br><br>v.<br><br>LIFESPAN CORPORATION and RHODE ISLAND HOSPITAL,<br>Defendants. | C.A. No. 14-191-JJM-LDA |

ORDER

Before the Court is Defendants' Motion for Summary Judgment as to Plaintiff David Onasile. ECF No. 59. The parties have filed extensive oppositions and replies. ECF Nos. 72, 77. The Court heard arguments on the motions. When the Court denied Defendants' Motions for Summary Judgment as to co-Plaintiffs Mojisola Afolabi and Eleanor Killi (ECF No. 81), the Court held under advisement the Motion for Summary Judgment as to Mr. Onasile and now issues its ruling. For the following reasons, the Court GRANTS the Defendants' Motion for Summary Judgment as to Plaintiff David Onasile. ECF No. 59.

I. BACKGROUND[1]

David Onasile is a Nigerian man who immigrated to the United States in 1988. Since 2003, he had been a mental health worker at Rhode Island Hospital.[2] During

---

[1] The Court is presenting the facts in the light most favorable to the nonmovant.

[2] Defendant Lifespan is "an umbrella organization that provides managerial, administrative, and other support services to its hospital subsidiaries, which include

early times of his employment, Mr. Onasile received written evaluations that noted "a number of interpersonal encounters with staff that ... required mediation to foster harmony in his working relationships with others." ECF No. 60 at 49. The hospital disciplined him "one or two times." ECF No. 72-2 at 34. His supervisors again cautioned him about his interactions with patients and co-workers in later years. *See id.* at 54–61. His personal interactions with staff and patients improved over time.

Mr. Onasile asserts that his work conditions began to change in February 2013. Joan Salhany, a white woman, became Director of Psychiatric Nursing at Rhode Island Hospital. As Director of Psychiatric Nursing, Ms. Salhany supervised the clinical and assistant clinical managers. Within two months of her appointment, at a staff meeting, Ms. Salhany told the employees of African descent[3] that it was hospital policy that they could not speak their native language in either the patient areas or staff areas. ECF No. 72-6 at 18, 20. Staff complained to their union representative about this policy they believed was discriminatory. ECF No. 72-4 at 140-141.

About four months later, Mr. Onasile was working with a group of patients when another hospital employee Aliss Collins[4] came into the room. The parties'

---

Rhode Island Hospital (the main teaching hospital for Brown University's medical school)..." *Lifespan Corp. v. New England Med. Ctr., Inc.*, No. 06-CV-421-JNL, 2011 WL 2134286, at *1 (D.R.I. May 24, 2011). The Defendants will collectively be called "Rhode Island Hospital."

[3] There were several employees who had emigrated from Africa on the Unit at that time.

[4] Aliss Collins is also referred to in documents as Alice Collins and Elyse Collins. Ms. Collins is African American.

accounts of what happened next differ. Mr. Onasile claims that Ms. Collins interrupted him and asked him for the patient menus. ECF No. 72-3 at 36-37. Mr. Onasile told her that he was busy and needed to finish what he was doing before he could retrieve the menus for her. Ms. Collins abruptly snatched the menus from his hands. *Id.*

Ms. Collins claims that when she picked up the menus from the table, Mr. Onasile scratched her trying to take them back. ECF No. 60 at 112. Michelle Domenico, a Registered Nurse on the Unit, saw the incident between Mr. Onasile and Ms. Collins. *Id.* at 185. Ms. Domenico said that she saw Ms. Collins "approach [Mr. Onasile] and then [Mr. Onasile] swung his arm toward [Ms.] Collins and then she jumped back immediately and said, 'don't hit me.'" *Id.*

Mr. Onasile met with hospital personnel and his union representative to discuss the incident. Mr. Onasile at first denied that he ever scratched or hit Collins. *Id.* at 183. Because Ms. Salhany saw the scratches on Ms. Collins' arm and all the witnesses informed her that Mr. Onasile had scratched Ms. Collins, Ms. Salhany believed that Mr. Onasile scratched Ms. Collins and was lying about the incident. *Id.* The hospital made the decision to fire Mr. Onasile for scratching Ms. Collins and then claiming that he had not done it. ECF No. 72-3 at 47.[5]

The hospital fired Mr. Onasile for violating, among other things, the Workplace Violence Policy and the Disruptive Behavior Policy. *See* ECF No. 60 at 192-93. The

---

[5] Mr. Onasile claims that Rhode Island Hospital did not afford Mr. Onasile an opportunity before the termination meeting to sit down with anyone to explain what had happened. ECF No. 72-3 at 47.

3

Workplace Violence Policy states that all employees are prohibited from "[p]hysically touching another person in an intimidating, malicious, or sexually harassing manner[.]" *Id.* at 193. Likewise, the Disruptive Behavior Policy precludes employees from engaging in "[i]nappropriate physical contact with another individual or contact that is threatening or intimidating[.]" *Id.* at 199. Each policy included discipline "up to and including termination of employment." *Id.* at 195; 199.

The parties then held an arbitration about Mr. Onasile's termination. *Id.* at 109-18. The Arbitrator found that Ms. Collins "was not shown to have any reason whatsoever to manufacture the story and an injury (however minor the injury) in connection with Mr. Onasile." *Id.* at 115. And "both Ms. Akanji and Ms. Salhany testified that they saw the scratches on Ms. Collins's arm." *Id* at 115-16. The Arbitrator concluded that Mr. Onasile's version of the events that nothing at all happened between him and Ms. Collins was not credible and noted that Mr. Onasile's "complete failure to acknowledge even a modicum of responsibility both during the Hospital's investigation and continuing through arbitration demonstrated such a bleak lack of self-awareness and skewing of reality that it is impossible to label as unreasonable the Hospital's decision to end his employment." *Id.* at 118. The arbitrator upheld Rhode Island Hospital's firing of Mr. Onasile.

Mr. Onasile, along with four other former employees of African descent from this Unit at Rhode Island Hospital, filed this lawsuit charging discriminatory treatment under Title VII, the Fair Employment Practices Act, and the Rhode Island Civil Rights Act. The Defendants moved to dismiss. ECF No. 59. Mr. Onasile

4

objected (ECF No. 72) and the Defendants replied. ECF No. 77. The Court heard arguments. The Court denied Defendants' Motions for Summary Judgment as to Mr. Onasile's co-workers (ECF No. 81) but held under advisement the Motion for Summary Judgment as to Mr. Onasile.

## II.  STANDARD OF REVIEW

Summary judgment is proper when the pleadings, discovery, and affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To determine whether summary judgment is suitable, the court analyzes the record in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *See Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

The burden falls first on the movant to assert an absence of genuine issue of material fact that needs resolution at trial. *See Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden then shifts to the nonmovant who must oppose the motion by presenting facts to show a genuine issue of material fact remains. *Id.* A factual issue is genuine if it "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it holds the power to "sway the outcome of the litigation under applicable law." *Nat'l Amusements*, 43 F.3d at 735. The nonmovant must rely on more than "effusive rhetoric and optimistic surmise" to prove a genuine issue of material fact. *Cadle*, 116 F.3d at 960. Instead, the evidence relied on by the nonmovant "must have substance

5

in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Nat'l Amusements*, 43 F.3d at 735 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

III. DISCUSSION

The United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), set forth a burden-shifting method to aid in the analysis of employment cases. Analyzing an employment discrimination case can be challenging because of its subtleties; employment discrimination rarely comes with "smoking gun" evidence or eyewitness testimony.

A. DISCRIMINATION

Under the *McDonnell Douglas* framework, a plaintiff must first prove a prima facie case. The burden then shifts to the employer, who must state a legitimate, nondiscriminatory reason for its decision; if the employer is successful, the inference of discrimination then disappears. The plaintiff then must show that the employer's stated reason is a pretext for prohibited discrimination. *See Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). "The 'ultimate touchstone' of the *McDonnell Douglas* analysis is whether the employer's actions were improperly motivated by discrimination. Evidence that the employer's stated reasons for its actions are pretextual can be sufficient to show improper motive, and hence, allow the plaintiff to survive summary judgment." *Id.* at 213-14 (internal citations omitted).

1. Prima Facie Case of Discrimination

To prove a prima facie case of discriminatory treatment, Mr. Onasile bears the burden of showing that "(1) [he] is a member of a protected class; (2) [he] was performing [his] job at a level that rules out the possibility that [he] was fired for inadequate job performance; (3) [he] suffered an adverse job action by [his] employer; and (4) the employer sought a replacement for [him] with roughly equivalent qualifications." *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13, 21 (R.I. 2005) (quoting *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 15 (1st Cir. 1994)). Rhode Island Hospital asserts that Mr. Onasile cannot make out a prima facie case of discrimination because he was not performing his job at a level that rules out the possibility that it fired him for inadequate job performance. ECF No. 59-1 at 14.

The First Circuit has held that proving a prima facie case in a discrimination action is "not onerous." *Stratus Computer*, 40 F.3d at 15 n.4. "If the plaintiff successfully bears this relatively light burden, we presume that the employer engaged in impermissible [] discrimination." *Id.* at 15 (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Here, for the purpose of efficiency in analyzing by Mr. Onasile's claim, the Court will assume that he has met the burden of showing a prima facie case. Mr. Onasile is a member of a protected class (race and national origin), he sets forth prima facie evidence that he was performing his job, and he suffered an adverse job consequence.

    2. <u>Nondiscriminatory Reason</u>

The burden of production then shifts "to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010). To satisfy this burden at the summary judgment stage, a defendant-employer needs to produce "enough competent evidence, *taken as true*, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action[.]" *Bonilla-Ramirez v. MVM, Inc.*, 904 F.3d 88, 94 (1st Cir. 2018) (quoting *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 248 (1st Cir. 1997)).

Rhode Island Hospital has articulated a legitimate, nondiscriminatory reason for firing Mr. Onasile. It offers evidence that it fired Mr. Onasile because he acted aggressively toward and scratched the arm of a co-worker. *See, e.g.*, ECF No. 59-1 at 15. Rhode Island Hospital's policies prohibit physically touching a co-worker in an aggressive or threatening manner. ECF No. 60 at 192-99. Terminating an employee for violating a company policy against violence in the workplace is a legitimate, nondiscriminatory reason.

### 3. Pretext

The burden then shifts back to Mr. Onasile, who must prove that Rhode Island Hospital's reason for termination was a pretext for discriminatory motives. He has the burden to produce evidence (1) that the Defendants fabricated the proffered reason for termination, and (2) that the Defendants' true motive to fire him was race or national origin discrimination. To show pretext, a plaintiff "must do more than cast doubt on the rationale proffered by the employer, the 'evidence must be of such

8

strength and quality as to permit a reasonable finding that the ... [termination] was obviously or manifestly unsupported.'" *Ruiz*, 124 F.3d at 248 (quoting *Brown v. Trs. of Bos. Univ.*, 891 F.2d 337, 346 (1st Cir. 1989) (internal quotation marks omitted)).

To prove that the stated reason for his firing–scratching a co-worker–was a pretext for prohibitive racial discrimination, Mr. Onasile argues that the allegation against him is weak and that Rhode Island Hospital did not discipline similarly situated white employees for similar infractions.

The undisputed evidence shows that Rhode Island Hospital reasonably believed that Mr. Onasile hit Ms. Collins during their argument.[6] An unbiased third-party saw Mr. Onasile swing his arm at Ms. Collins and then heard Ms. Collins yell "don't hit me." ECF No. 60 at 7, ¶ 44. Staff saw the scratches on Ms. Collins' arm right after the incident. *Id.* at 9, ¶ 68. Mr. Onasile, during his deposition, admitted that he may have hit Ms. Collins. *Id.* at 10, ¶ 75.[7]

---

[6] The question is whether an employer believed its stated reason for its employment decision. *See Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 31-32 (1st Cir. 2007) ("In the absence of some other proof that the decisionmaker harbored a discriminatory animus, it is not enough that [the employer's] perception may have been incorrect. Rather, the plaintiff must show that the decisionmaker did not believe in the accuracy of the reason given.") (citations omitted). "[T]he issue is not whether [the employer's] reasons . . . were real, but merely whether the decisionmakers ... believed them to be real." *Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 674 (1st Cir. 1996).

[7] After noting that Collins had no reason to lie about the incident and two staff members saw the scratches on Ms. Collins' arm, the Arbitrator ruled in Rhode Island Hospital's favor and upheld the termination. ECF No. 60 at ¶¶ 67-70. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974) ("The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate."); *Udo v. Tomes*, 54 F.3d 9, 13 n.4 (1st. Cir. 1995) (holding that a court can use an arbitrator's decision to determine pretext).

While Mr. Onasile alleges that "Defendants...failed to discipline similarly-situated white employees for other similar infractions" (ECF No. 72 at 7-8), he offers no evidence to support the allegation. Mr. Onasile cites a single incident about an employee "snatch[ing] a piece of paper out of [a fellow employee's] hand." *Id.* at 8. But this single incident cannot support a finding of disparate treatment. There is little evidence in the record about this incident and above all, there is no evidence of physical contact or injury as there was in the incident involving Mr. Onasile and Ms. Collins.

The Court holds that there is no evidence that Rhode Island Hospital's decision to fire Mr. Onasile was a pretext for prohibitive discrimination.

B.  RETALIATION

Mr. Onasile also asserts a claim for illegal retaliation. To prevail on his retaliation claim, Mr. Onasile must prove Rhode Island Hospital retaliated against him because he engaged in protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (holding that a plaintiff in a retaliation case must prove that "his or her protected activity was a but-for cause of the alleged adverse action by the employer."); *see also Ponte v. Steelcase, Inc.*, 741 F.3d 310, 321 (1st Cir. 2014) (same). The prima facie elements of a retaliation claim require that the plaintiff (1) engage in protected conduct, (2) suffer an adverse action, and (3) show a causal connection between the protected activity and the adverse employment action. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991).

Mr. Onasile has failed to prove that Ms. Salhany knew that he engaged in protected activity prior to her firing him.[8] The undisputed evidence is that Ms. Salhany was unaware that Mr. Onasile had made any complaints about using his native language.[9] ECF No. 60 at 14, ¶¶ 103, 109. A retaliation claim cannot lie where the alleged decision-maker was unaware of the protected activity. *See Sellers v. U.S. Dep't of Def.*, 654 F. Supp. 2d 61, 110 (D.R.I. 2009) (holding that employee cannot show a causal connection between protected activity and adverse action where the decision-maker was unaware of protected activity). Mr. Onasile's termination thus could not have been in retaliation for the alleged complaints because the decision-maker lacked knowledge that Mr. Onasile was one of the individuals who complained.

The Court holds that there is no evidence that Rhode Island Hospital's decision to fire Mr. Onasile was in retaliation for protected conduct.

C.  STATE LAW CLAIM

Mr. Onasile also alleges a claim under the Rhode Island Whistleblowers Protection Act ("RIWPA"). Because the analysis for a RIWPA claim mirrors that of a

---

[8] The alleged protected activity that occurred after Rhode Island Hospital fired Mr. Onasile does not afford him any protection.

[9] Even though Mr. Onasile's co-workers complained about the ability to speak a language other than English at work, Mr. Onasile cannot rely on these complaints to prevail on his retaliation claim. The mere fact that other employees may have complained about certain conduct they believed to be discriminatory is inconsequential to Mr. Onasile's argument that he engaged in any protected activity. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175 (2011) (holding that third-party reprisals to "a close family member" could constitute retaliation, but "inflicting a milder reprisal on a mere acquaintance will almost never do so...").

retaliation claim, Mr. Onasile's RIWPA claim fails for the same reasons above in section B.[10]

IV. CONCLUSION

Because there are no disputed issues of material fact and because Rhode Island Hospital is entitled to judgment as a matter of law, the Court GRANTS the Defendants' Motion for Summary Judgment as to Plaintiff David Onasile. ECF No. 59.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

May 23, 2019

---

[10] Mr. Onasile conceded at oral argument that he is not pressing his claim in Count IV for negligent training and supervision.